May it please the Court, my name is Robin Mosak-Alberry and I represent the appellant in this case, Mr. Abbas Goljah-Mofrad. Mr. Mofrad is a 44-year-old native of Iran, citizen of Canada, and a lawful permanent resident of the United States. He ended up in removal proceedings in December 2000 as he attempted to enter the United States from Canada with his permanent resident card. His card was confiscated and he was declared inadmissible as an alien not having a proper immigrant visa or entry document. He actually tried to enter two times, once on December 18, 2000 when his card was taken, and again December 23 when he was placed in proceedings in Blaine, Washington, with the issuance of a notice to appear. And the key issues in this case are, is he in fact inadmissible under the Immigration and Nationality Act as listed on the notice to appear? The specific section is 212A7A, which is, again, the immigrant lacking valid entry documents or immigrant visa. If he is indeed inadmissible, does he qualify for a waiver? There is a documentary waiver provided under the same act under Section 211B. Now, a judge in Blaine, Washington, ruled that he did not qualify for the waiver, that he wasn't admissible as charged, and he had, in fact, abandoned his permanent resident status for being so long in Canada, specifically between 1995 to 2000. Let's start with the abandonment of the permanent resident status. Yes, Your Honor. What's the standard of review we apply to that determination? It's a substantial evidence standard, Your Honor. And there's substantial evidence in the record. That decision has to be supported. Well, if a reasonable fact finder would conclude that the alien's version of events is true, then it would be? No. If a reasonable fact finder would be compelled to conclude, no other rational conclusion would be possible. Correct, Your Honor. Here it seems that under the Singh case and all the use of the terms, reasonably relatively short periods of times and things like that, that how long was his absence? Five years. Over the period of five years, Your Honor, he made approximately 13 trips in and out of the United States. Three of those were about two to three weeks in length to visit family. He was a domiciliary, a resident of Canada for five years. He was physically in Canada most of the time, yes, Your Honor. And he came back here to visit, and then he'd go back to Canada. Yes, Your Honor. And the reason that... The length of time alone, why doesn't that suggest that there's substantial evidence in the record supporting the decision? Well, Your Honor, normally that would seem the case, but we have to remember that intent, the alien's intent, whether he intended to abandon his permanent residence, controls, not necessarily the length of time. As this Court recently ruled in Hodogolian, there was an Iranian national who spent much time abroad as well after being admitted as a permanent resident. In fact, his individual trips were longer than Mr. Mofrad's. However, Mr. Mofrad didn't spend as much time in the United States as the appellant in Canada did. But it gives us the intent to return to the United States at some time in the future. Right, Your Honor. It does have to be backed up by actions. And the Singh case pointed out by Your Honor lists the factors that we can look at to see what is the alien's intent. The case you say that Trott just indicated, intent to return to the United States within a relatively short period of time. Yes, that is... What's the time your client went back to Canada and remained and decided to stay in Canada, what circumstances would lead us to conclude that he only intended to stay there a relatively short period of time? Your Honor, his remaining in Canada was due to a condition that was beyond his control. It was a medical reason. And when he went back in 1995 to sell the rest of his personal belongings and complete his move to the United States... That, of course, is the crux of the case. I mean, the ALJ seemed to have conceded, have assumed that if he had gone to Canada, developed a medical condition and been physically unable to return, yes, that would have been... Yes, he did concede that, Your Honor. But the point that he made over and over again is that that is what happened. As evidenced by the fact that he did come back to the United States intermittently. His problem was that he became ill and needed medical care and was able to get the medical care for free in Canada and wasn't able to get it. He was afraid he wouldn't be able to in the United States, even though his family was willing to support him. Yes, as a citizen of Canada, he... So the ALJ viewed all this as a choice, and the question is, what's wrong with that analysis? Your Honor, I would just respectfully disagree with the judge and say that he made trips as his health would allow. He made very short trips, limited in scope and duration, as his condition of... You're suggesting that he was physically unable to travel? For long periods of time, Your Honor, yes. He would have been physically unable to live in the United States? He couldn't have come here and gotten his medication here, but for financial issues? Well, his concern, Your Honor, is that he would not be able to get the necessary care in the United States because he did not have any health insurance or access to a doctor in place, as he did as a citizen of Canada. He was able to get all the necessary treatment. He was able to get all the necessary care, and his family was willing to support him here. Your Honor, that's true that they did offer to support him, but he felt he would be a burden on them, and was he indicated in his own words, he was scared to return here because he felt that he didn't have any doctor to go to here where he could provide... So the ultimate question is, what's the standard here? I mean, he – it seems to me we have to take as established that he made a choice for financial reasons, which may have been excellent financial reasons, but he did make a choice for financial reasons. Does that matter, or is the standard what his ultimate – whether he ultimately intended to return as soon as those financial reasons were over? Well, his ultimate intent does control, as the Supreme Court indicated, in matter of Kane, and it has been affirmed by this Court in its own cases, such as Cota-Goleon and Singh v. Reno. Isn't it Cota-Login, or however one says it, that he was gone for an equivalent period of time? But that isn't my recollection. My recollection, and I said in that case, was that he was – he was back here for substantial periods of time in the meanwhile. In other words, it wasn't a situation where he simply came back for a day or two or two or three weeks at a time. Your Honor, in that case, yes, there were three large trips, one for three to four months. Three large trips to Iran, but there was also a substantial amount of time in the United States. What's unusual about this case is that he never had lived in the United States. Yes, Your Honor. So compared to Cota-Goleon, there are – there's less physical presence spent here by my client than the appellant in that case. However, he did physically make more trips back and forth to the United States than Mr. Cota-Goleon did. So it's not cut and dry. It doesn't – He never lived here. He never lived here, never, during that time period, right? Just during his visits, Your Honor, during the initial period when he was admitted in May of 1995. He didn't have a house, a job, or anything. Property, bank accounts, nothing. Right. And getting to the Singh factors, Your Honor, we do have to look at family ties, business ties, property ties, that sort of thing, both in the United States and abroad. In this case, although he spent a lot of physical time in Canada, he did not acquire any property interest there. You're asking us to re-weigh the evidence. And that's what lawyers who come before us – and I don't mean this as criticism, run into all the time – it sounds like you're asking us to re-weigh the evidence. And the Supreme Court has told us, we tried that for a long period of time. The Supreme Court told us, cut it out. You can only overturn these kinds of decisions if every reasonable fact-finder would be compelled to such a conclusion. And I don't see how your case compels this conclusion. Well, Your Honor, I just would respectfully say that the judge, in his decision, he did concede that if it was a medical reason that kept him there, even all five years, that would have been enough to grant him a documentary waiver. But in the judge's opinion, he didn't feel that there wasn't a medical condition that kept him abroad. Well, isn't that right? He said this treatment's available in the United States. It may be available, Your Honor, but at a high cost without insurance, he couldn't afford that and didn't have anybody – a doctor here in place. But is there any issue here as to the legal standard that the judge applied? It seemed to me at points the judge seemed to be saying on a sort of per se basis that since he was a resident of Canada and a citizen of Canada and getting benefits as a resident of Canada, he couldn't be a legal permanent resident of the United States. And that would be wrong, as a legal standard. Well, yes, actually, Your Honor, just being a citizen of Canada is enough to get the benefits under the medical system. You don't have to show that you are a resident full-time there, just citizenship alone. The letter in the record from the British Columbia is saying that you did have to be a resident in Britain. I believe if you read that letter very closely, it does indicate as long as you're at least a citizen as well, that's an either-or prong, if you're a citizen or a resident of a – Does that make any difference where you live as long as you're a citizen? Correct. And I would just like quickly to get back to the same factor, Your Honor. Even though he did not have property ties or business ties here in the United States, he didn't have them in Canada either. He didn't acquire any property there. He was living with friends. He wanted to just try to get this asthma under control to the point where he could return permanently to the United States. My question is, it was said repeatedly in the record that he could have his mother reapply for him. Has that happened? The process has started, Your Honor. She submitted a petition for him. However, under the quota system, the priority date for that would be probably about a year and a half to two years away. So he could eventually re-immigrate if necessary. But again, our argument is that he never abandoned his permanent residence in the first place. That was granted by the same mother. He's the only family member kind of floating out there with no family connections at all in Canada. All of his family are here, citizen mother, citizen brother, citizen sister, in-laws, extended family. All of his ties that he has are here, even though they're not the traditional ones as far as property and business holdings. If no further questions. Thank you. Thank you, counsel. Please, the Court. Barry Pettinato appearing on behalf of the Respondent. I think the Court correctly appreciates that the standard of review here is substantial evidence, and unless the evidence compels a contrary conclusion that reached by the immigration judge, the Court will have to dismiss the petition. I would like to start by quickly dispensing with the Condolian case, which I appreciate Judge Berzon was on that panel. Condolian, Conadolian, does not help this case, the petitioner's case at all, for three specific reasons. One, in that case, this Court specifically noted that the majority of Condolian's time was actually, as a lawful permanent resident, was spent here in the United States. In this case, we have the petitioner spending two to three weeks when he initially immigrated, and then not living here again for the next five and a half years. Now, the time that he came to visit three different times to Idaho and Arizona and stayed for two weeks, that time can't be considered even living here permanently as a permanent resident, because his intent always was just to visit family and to go back to Canada. Secondly, in the Condolian case, he returned to Iran, and he actually sold his assets, wrapped up his business, gathered up his documents that he needed for his children here. In this case, we have the petitioner, when he returned to Canada, although that was his original intent, he did none of those things in order to wrap up his business and take up his permanent residence here in the United States. And thirdly, one of the reasons for one of the extended trips in Condolian was, as Judge Berzon will remember, the Iranian tax officials stopped him at the border and said, you are required to pay these back taxes, and you will not be allowed to exit and get clearance to leave Iran until such time as you do. So that was a cause of an extended stay within Iran. So I don't think the petitioner can find any help in Condolian. I mean, the court has to keep in mind the critical factors here. The two to three weeks that he was the only time that he lived here as a permanent resident, during the five years, five and a half years that he was in Canada, he lived there as a Canadian citizen, all of his health benefits were paid by the Ministry of Health, and he also was receiving Canadian social services. And there's nothing wrong with any of that. I think the court appreciates he made a choice to do that. But the thing of it is, he cannot be having those sorts of ties to the foreign country of Canada and also be residing permanently here in the United States. To hold that would be just a perversion of the law in terms of the status of a lawful permanent resident. That's a privilege. Ginsburg. In terms of the applicable standard, he – there seems to be no question that when he – or no dispute that when he went back to Canada, he intended to stay long – only long enough to wrap things up. Correct. And he – so he did not – his initial trip to Canada was for something that had – was for a short period of time, was intended to be for a short period of time. Right. And that the circumstances which then developed were circumstances which had an ascertainable end, basically, when he got well enough to be able to support himself. Well, it wasn't just – well, it was a combination of two things. When he got well enough to – when his health returned to sufficient good health so that he could then support himself, it was sort of a conjunctive thing, good health and ability to support himself. In terms of the standards in our cases, there was a – it was something that could possibly have ended in a relatively short period of time. And he expected it to. He testified that he expected it to, but it didn't. I would say after five years, I think we fall without – out of the possibility that it could occur within a relatively short period of time as the record ends up reflecting. In any particular period of time, he could have thought and he did think that it could be over in a month or two from now, whenever now is. He might have thought that, and maybe he thought, okay, after that happens, I will return to the United States and take up my permanent residence. But, in fact, he never did. If it was simply – The IJ did not disbelieve him, right? There was no credibility issue as to whether he, in fact, intended all along when he was well enough to support himself to come to the United States. Right. The immigration judge never doubted his intent. Of course, this Court has appreciated in the abandonment cases it has decided intent is something that you cannot get into the mind of the lawful permanent resident, so essentially you have to judge his intent by his conduct. Now, we're looking at a situation here where he was healthy enough to return to the United States for three extended visits of two-week periods of time. And that, in conjunction with the fact that his family said, please come to stay with us in Arizona, we will financially support you, we will help you with your medication, and yet he rejected that offer from his family. That's not an odd thing for a 40-year-old man to do, right? Well, Your Honor, this case maybe all comes down to choices. He stuck with the choices he made. Maybe he didn't want to do that, but that doesn't – he could have returned to take up his permanent residence. It's just perverse to think that he can live – he could live up in Canada for 20 years and say, well, I'm still not feeling like I can support myself, so I'm not going to come back to the United States just yet. Twenty years go by? Is that going to be a temporary visit? The critical terminology in the statute is that lawful permanent residents have to reside in the United States permanently. However, they have the privilege of taking temporary visits abroad. The status of being a lawful permanent resident is very different from being a United States citizen. A United States citizen can maintain their citizenship here forever and go off and live in Europe or Canada or whatever and never return to the United States without any threat of abandoning their status as a United States citizen. That is not the case with a lawful permanent resident. By the very nature of the term, a lawful permanent resident, they must permanently reside here. In this case, it's very clear. He never resided here. He never worked here. He had no minimal ties here. His ties were all in Canada. That's where he was actually residing. So your bottom line is substantial evidence? Yes. There's no doubt in this case. There's nothing in this record that would compel a contrary conclusion to that reached by the immigration judge. I think the immigration judge's decision is well thought of. It's well reasoned. He points to the evidence in this case. They make the argument that it was entirely based on medical reasons, but the judge doesn't see it that way. It's a combination of medical reasons combined with financial reasons. And in this case the one problem I saw with the judge's reasoning, not in his final opinion particularly, but in some ways in the course of the hearing, was that at points he seemed to be saying, expressing a per se rule that because you were a resident of Canada and a citizen of Canada and had to be to get the social security, the social services benefits and the medical benefits, you couldn't be a permanent resident of the United States. My understanding of the term permanent resident is that it is more of a term of origin and doesn't necessarily have this per se. Your Honor, I didn't read the immigration judge's decision to sort of create a per se rule simply saying because he was a Canadian citizen, because he had these ties there. I think the immigration judge was looking at the whole thing. But because he had to be he said he had to be technically a resident, your opposing counsel says not, in order to get the British Columbia medical benefits. So he thought that there was simply a necessary inconsistency between him being sufficiently a resident of British Columbia to get British Columbia medical benefits and also to be a legal permanent resident of the United States. Is that true? Is it true that there would be a problem with that? No, your Honor, because I think in terms of what the petitioner's counsel is correct in terms of what it said. It says you actually had to be a resident of British Columbia or a Canadian citizen in order to be eligible. I think that really was a side issue. The government introduced the letter at the hearing simply to – but it really was an undisputed fact that he was a Canadian citizen and that he was entitled to those benefits. I don't think the judge was saying that. That alone was sufficient to find that he was automatically not a permanent resident of the United States. I didn't see that in the judge's decision. If – I could comment on one thing. The waiver that the petitioner has asked the court to look at is not – as I point out in my brief, that's not a waiver the court can reach. The immigration judge decided because there was no – he was not a permanent resident, he was not entitled to the waiver of entering into the United States without any valid entry document. And that's a waiver that's clearly within 242A2B, small double I, as I point out in my brief. It's solely within the discretion of the Attorney General to allow a lawful permanent resident return. And this – as Congress has said, the court will have no jurisdiction over such decisions of the Attorney General. In closing, in this particular case, it's very clear that the trip was not relatively shot, and also I think it's clear that his – that the trip did not terminate upon the occurrence of an event having a reasonable possibility of occurring within a short period of time. As the district court in Angeles, which is a Maryland district court case, which this court in Alvarez cited to, said, And that's what exactly happened. He wanted to establish his permanent residence, take it back up, way down the road at some very unfixable event or date or time, and that simply is not allowable by the court. And this court bought into that in its decision in Alvarez.  resident in the United States. And I would respectfully request that the petition for review be denied. Thank you, Counsel. Thank you. I believe I had about 14 or 15 seconds. Your Honor, the immigration judge conceded that if a medical reason had been the reason keeping Mr. Mofrat in Canada, that would be enough to still consider him a permanent resident. So if you believe that these medical problems that he had, which were chronic, kept him in Canada, then you have to overturn the judge's decision, because he did not stay there voluntarily or by choice, as indicated by opposing counsel. He was there for medical reasons and health reasons. On the issue of the waiver, 242A to B, small double I, suggests that that's none of our business. Do you have any response to that? No, Your Honor. That is correct. Thank you both. The case is argued as ordered and submitted. We'll go on to Valley Park v. Valley Park.
judges: Trott, Paez, Berzon